**APPENDIX**

This appendix contains the text of the Digital Equity Act of 2021, as printed in the United States Statutes at Large. The Act was enacted as sections 60301–60307 of the Infrastructure Investment and Jobs Act (IIJA), Pub. L. No. 117–58, 135 Stat. 429–1467 (Nov. 15, 2021).

The Act is codified at 47 U.S.C. §§ 1721–1726. Title 47 of the United States Code has not been enacted as positive law, so the IIJA (as printed in the Statutes at Large) is the actual source of the law. *Cf.* 1 U.S.C. § 204(a). For simplicity, the Memorandum generally cites to the section numbers in the U.S. Code, not the IIJA. *Cf.* 2 U.S.C. § 285b(4).

"(A) DEFINITION.—In this paragraph, the term 'initial round of funding'—

"(i) means the allocation under paragraph (2)(E) of funds appropriated under subsection (b)(1); and

"(ii) does not include any reallocation of funds under paragraph (2)(F).

"(B) NEW FUNDING.—If Congress appropriates additional funds for grants under subsection (c) after the date of enactment of this Act, the Assistant Secretary—

"(i) may use a portion of the funds to fully fund any grants under that subsection for which the Assistant Secretary received an application and which the Assistant Secretary did not fully fund during the initial round of funding; and

"(ii) shall allocate any remaining funds through subsequent funding rounds consistent with the requirements of this section, except as provided in subparagraph (C) of this paragraph.

*Allocation.*

"(C) EXCEPTIONS.—If Congress appropriates additional funds for grants under subsection (c) after the date of enactment of this Act—

*Applicability.*

"(i) the Assistant Secretary shall not be required to issue an additional notice under paragraph (1) of this subsection, but shall inform eligible entities that additional funding has been made available for grants under subsection (c) and describe the changes made to the Tribal Broadband Connectivity Program under that subsection by section 60201 of the Infrastructure Investment and Jobs Act;

"(ii) the requirement under paragraph (2)(C) of this subsection shall be applied individually to each round of funding for grants under subsection (c);

"(iii) paragraph (2)(A) of this subsection shall be applied by substituting '180-day period beginning on the date on which the Assistant Secretary informs eligible entities that additional funding has been made available for grants under subsection (c)' for '90-day period beginning on the date on which the Assistant Secretary issues the notice under paragraph (1)'; and

*Time period.*

"(iv) notwithstanding paragraph (2)(F) of this subsection, in the case of funds appropriated under subsection (b)(1) that were not allocated during the initial round of funding, the Assistant Secretary may elect to allocate the funds during any subsequent round of funding for grants under subsection (c).".

# TITLE III—DIGITAL EQUITY ACT OF 2021

*Digital Equity Act of 2021.*

**SEC. 60301. SHORT TITLE.**

*47 USC 1701 note.*

This title may be cited as the "Digital Equity Act of 2021".

**SEC. 60302. DEFINITIONS.**

*47 USC 1721.*

In this title:

(1) ADOPTION OF BROADBAND.—The term "adoption of broadband" means the process by which an individual obtains daily access to the internet—

(A) at a speed, quality, and capacity—
(i) that is necessary for the individual to accomplish common tasks; and
(ii) such that the access qualifies as an advanced telecommunications capability;
(B) with the digital skills that are necessary for the individual to participate online; and
(C) on a—
(i) personal device; and
(ii) secure and convenient network.
(2) ADVANCED TELECOMMUNICATIONS CAPABILITY.—The term "advanced telecommunications capability" has the meaning given the term in section 706(d) of the Telecommunications Act of 1996 (47 U.S.C. 1302(d)).
(3) AGING INDIVIDUAL.—The term "aging individual" has the meaning given the term "older individual" in section 102 of the Older Americans Act of 1965 (42 U.S.C. 3002).
(4) APPROPRIATE COMMITTEES OF CONGRESS.—The term "appropriate committees of Congress" means—
(A) the Committee on Appropriations of the Senate;
(B) the Committee on Commerce, Science, and Transportation of the Senate;
(C) the Committee on Appropriations of the House of Representatives; and
(D) the Committee on Energy and Commerce of the House of Representatives.
(5) ASSISTANT SECRETARY.—The term "Assistant Secretary" means the Assistant Secretary of Commerce for Communications and Information.
(6) COMMUNITY ANCHOR INSTITUTION.—The term "community anchor institution" means a public school, a public or multi-family housing authority, a library, a medical or healthcare provider, a community college or other institution of higher education, a State library agency, and any other nonprofit or governmental community support organization.
(7) COVERED HOUSEHOLD.—The term "covered household" means a household, the income of which for the most recently completed year is not more than 150 percent of an amount equal to the poverty level, as determined by using criteria of poverty established by the Bureau of the Census.
(8) COVERED POPULATIONS.—The term "covered populations" means—
(A) individuals who live in covered households;
(B) aging individuals;
(C) incarcerated individuals, other than individuals who are incarcerated in a Federal correctional facility;
(D) veterans;
(E) individuals with disabilities;
(F) individuals with a language barrier, including individuals who—
(i) are English learners; and
(ii) have low levels of literacy;
(G) individuals who are members of a racial or ethnic minority group; and
(H) individuals who primarily reside in a rural area.

(9) COVERED PROGRAMS.—The term "covered programs" means the State Digital Equity Capacity Grant Program established under section 60304 and the Digital Equity Competitive Grant Program established under section 60305.

(10) DIGITAL EQUITY.—The term "digital equity" means the condition in which individuals and communities have the information technology capacity that is needed for full participation in the society and economy of the United States.

(11) DIGITAL INCLUSION.—The term "digital inclusion"—

(A) means the activities that are necessary to ensure that all individuals in the United States have access to, and the use of, affordable information and communication technologies, such as—

(i) reliable fixed and wireless broadband internet service;

(ii) internet-enabled devices that meet the needs of the user; and

(iii) applications and online content designed to enable and encourage self-sufficiency, participation, and collaboration; and

(B) includes—

(i) obtaining access to digital literacy training;

(ii) the provision of quality technical support; and

(iii) obtaining basic awareness of measures to ensure online privacy and cybersecurity.

(12) DIGITAL LITERACY.—The term "digital literacy" means the skills associated with using technology to enable users to find, evaluate, organize, create, and communicate information.

(13) DISABILITY.—The term "disability" has the meaning given the term in section 3 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12102).

(14) ELIGIBLE STATE.—The term "eligible State" means—

(A) with respect to planning grants made available under section 60304(c)(3), a State with respect to which the Assistant Secretary has approved an application submitted to the Assistant Secretary under section 60304(c)(3)(C); and

(B) with respect to capacity grants awarded under section 60304(d), a State with respect to which the Assistant Secretary has approved an application submitted to the Assistant Secretary under section 60304(d)(2), including approval of the State Digital Equity Plan developed by the State under section 60304(c).

(15) GENDER IDENTITY.—The term "gender identity" has the meaning given the term in section 249(c) of title 18, United States Code.

(16) INDIAN TRIBE.—The term "Indian Tribe" has the meaning given the term in section 4(e) of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 5304(e)).

(17) INSTITUTION OF HIGHER EDUCATION.—The term "institution of higher education"—

(A) has the meaning given the term in section 101 of the Higher Education Act of 1965 (20 U.S.C. 1001); and

(B) includes a postsecondary vocational institution.

135 STAT. 1212          PUBLIC LAW 117–58—NOV. 15, 2021

(18) LOCAL EDUCATIONAL AGENCY.—The term "local educational agency" has the meaning given the term in section 8101(30) of the Elementary and Secondary Education Act of 1965 (20 U.S.C. 7801(30)).

(19) POSTSECONDARY VOCATIONAL INSTITUTION.—The term "postsecondary vocational institution" has the meaning given the term in section 102(c) of the Higher Education Act of 1965 (20 U.S.C. 1002(c)).

(20) RURAL AREA.—The term "rural area" has the meaning given the term in section 601(b)(3) of the Rural Electrification Act of 1936 (7 U.S.C. 950bb(b)(3)).

(21) STATE.—The term "State" means—
(A) any State of the United States;
(B) the District of Columbia; and
(C) the Commonwealth of Puerto Rico.

(22) VETERAN.—The term "veteran" has the meaning given the term in section 101 of title 38, United States Code.

(23) WORKFORCE DEVELOPMENT PROGRAM.—The term "workforce development program" has the meaning given the term in section 3(66) of the Workforce Innovation and Opportunity Act (29 U.S.C. 3102(66)).

47 USC 1722.

**SEC. 60303. SENSE OF CONGRESS.**

It is the sense of Congress that—
(1) a broadband connection and digital literacy are increasingly critical to how individuals—
(A) participate in the society, economy, and civic institutions of the United States; and
(B) access health care and essential services, obtain education, and build careers;
(2) digital exclusion—
(A) carries a high societal and economic cost;
(B) materially harms the opportunity of an individual with respect to the economic success, educational achievement, positive health outcomes, social inclusion, and civic engagement of that individual; and
(C) exacerbates existing wealth and income gaps, especially those experienced by covered populations;
(3) achieving digital equity for all people of the United States requires additional and sustained investment and research efforts;
(4) the Federal Government, as well as State, tribal, territorial, and local governments, have made social, legal, and economic obligations that necessarily extend to how the citizens and residents of those governments access and use the internet; and
(5) achieving digital equity is a matter of social and economic justice and is worth pursuing.

47 USC 1723.

**SEC. 60304. STATE DIGITAL EQUITY CAPACITY GRANT PROGRAM.**

(a) ESTABLISHMENT; PURPOSE.—
(1) IN GENERAL.—The Assistant Secretary shall establish in the Department of Commerce the State Digital Equity Capacity Grant Program (referred to in this section as the "Program")—
(A) the purpose of which is to promote the achievement of digital equity, support digital inclusion activities, and

PUBLIC LAW 117–58—NOV. 15, 2021        135 STAT. 1213

build capacity for efforts by States relating to the adoption of broadband by residents of those States;

(B) through which the Assistant Secretary shall make grants to States in accordance with the requirements of this section; and

(C) which shall ensure that States have the capacity to promote the achievement of digital equity and support digital inclusion activities.

(2) CONSULTATION WITH OTHER FEDERAL AGENCIES; NO CONFLICT.—In establishing the Program under paragraph (1), the Assistant Secretary shall—

(A) consult with—

(i) the Secretary of Agriculture;

(ii) the Secretary of Housing and Urban Development;

(iii) the Secretary of Education;

(iv) the Secretary of Labor;

(v) the Secretary of Health and Human Services;

(vi) the Secretary of Veterans Affairs;

(vii) the Secretary of the Interior;

(viii) the Federal Communications Commission;

(ix) the Federal Trade Commission;

(x) the Director of the Institute of Museum and Library Services;

(xi) the Administrator of the Small Business Administration;

(xii) the Federal Co-Chair of the Appalachian Regional Commission; and

(xiii) the head of any other agency that the Assistant Secretary determines to be appropriate; and

(B) ensure that the Program complements and enhances, and does not conflict with, other Federal broadband initiatives and programs.

(b) ADMINISTERING ENTITY.—

(1) SELECTION; FUNCTION.—The governor (or equivalent official) of a State that wishes to be awarded a grant under this section shall, from among entities that are eligible under paragraph (2), select an administering entity for that State, which shall—

(A) serve as the recipient of, and administering agent for, any grant awarded to the State under this section;

(B) develop, implement, and oversee the State Digital Equity Plan for the State described in subsection (c);

(C) make subgrants to any entity described in subsection (c)(1)(D) that is located in the State in support of—

(i) the State Digital Equity Plan for the State; and

(ii) digital inclusion activities in the State generally; and

(D) serve as—

(i) an advocate for digital equity policy and digital inclusion activities; and

(ii) a repository of best practice materials regarding the policies and activities described in clause (i).

(2) ELIGIBLE ENTITIES.—Any of the following entities may serve as the administering entity for a State for the purposes

of this section if the entity has demonstrated a capacity to administer the Program on a statewide level:

(A) The State, a political subdivision, agency, or instrumentality of the State, an Indian Tribe located in the State, an Alaska Native entity located in the State, or a Native Hawaiian organization located in the State.

(B) A foundation, corporation, institution, association, or coalition that is—

(i) a not-for-profit entity;

(ii) providing services in the State; and

(iii) not a school.

(C) A community anchor institution, other than a school, that is located in the State.

(D) A local educational agency that is located in the State.

(E) An entity located in the State that carries out a workforce development program.

(F) An agency of the State that is responsible for administering or supervising adult education and literacy activities in the State.

(G) A public or multi-family housing authority that is located in the State.

(H) A partnership between any of the entities described in subparagraphs (A) through (G).

(c) STATE DIGITAL EQUITY PLAN.—

(1) DEVELOPMENT; CONTENTS.—A State that wishes to be awarded a grant under subsection (d) shall develop a State Digital Equity Plan for the State, which shall include—

(A) the identification of the barriers to digital equity faced by covered populations in the State;

(B) measurable objectives for documenting and promoting, among each group described in subparagraphs (A) through (H) of section 60302(8) located in that State—

(i) the availability of, and affordability of access to, fixed and wireless broadband technology;

(ii) the online accessibility and inclusivity of public resources and services;

(iii) digital literacy;

(iv) awareness of, and the use of, measures to secure the online privacy of, and cybersecurity with respect to, an individual; and

(v) the availability and affordability of consumer devices and technical support for those devices;

Assessment.

(C) an assessment of how the objectives described in subparagraph (B) will impact and interact with the State's—

(i) economic and workforce development goals, plans, and outcomes;

(ii) educational outcomes;

(iii) health outcomes;

(iv) civic and social engagement; and

(v) delivery of other essential services;

(D) in order to achieve the objectives described in subparagraph (B), a description of how the State plans to collaborate with key stakeholders in the State, which may include—

(i) community anchor institutions;

PUBLIC LAW 117–58—NOV. 15, 2021      135 STAT. 1215

(ii) county and municipal governments;

(iii) local educational agencies;

(iv) where applicable, Indian Tribes, Alaska Native entities, or Native Hawaiian organizations;

(v) nonprofit organizations;

(vi) organizations that represent—

(I) individuals with disabilities, including organizations that represent children with disabilities;

(II) aging individuals;

(III) individuals with language barriers, including—

(aa) individuals who are English learners; and

(bb) individuals who have low levels of literacy;

(IV) veterans; and

(V) individuals in that State who are incarcerated in facilities other than Federal correctional facilities;

(vii) civil rights organizations;

(viii) entities that carry out workforce development programs;

(ix) agencies of the State that are responsible for administering or supervising adult education and literacy activities in the State;

(x) public housing authorities in the State; and

(xi) a partnership between any of the entities described in clauses (i) through (x); and

(E) a list of organizations with which the administering entity for the State collaborated in developing and implementing the Plan.

List.

(2) PUBLIC AVAILABILITY.—

(A) IN GENERAL.—The administering entity for a State shall make the State Digital Equity Plan of the State available for public comment for a period of not less than 30 days before the date on which the State submits an application to the Assistant Secretary under subsection (d)(2).

(B) CONSIDERATION OF COMMENTS RECEIVED.—The administering entity for a State shall, with respect to an application submitted to the Assistant Secretary under subsection (d)(2)—

(i) before submitting the application—

(I) consider all comments received during the comment period described in subparagraph (A) with respect to the application (referred to in this subparagraph as the "comment period"); and

(II) make any changes to the plan that the administering entity determines to be worthwhile; and

(ii) when submitting the application—

(I) describe any changes pursued by the administering entity in response to comments received during the comment period; and

(II) include a written response to each comment received during the comment period.

135 STAT. 1216          PUBLIC LAW 117–58—NOV. 15, 2021

(3) PLANNING GRANTS.—

Effective date.

(A) IN GENERAL.—Beginning in the first fiscal year that begins after the date of enactment of this Act, the Assistant Secretary shall, in accordance with the requirements of this paragraph, award planning grants to States for the purpose of developing the State Digital Equity Plans of those States under this subsection.

(B) ELIGIBILITY.—In order to be awarded a planning grant under this paragraph, a State—

(i) shall submit to the Assistant Secretary an application under subparagraph (C); and

(ii) may not have been awarded, at any time, a planning grant under this paragraph.

Deadlines.
Determination.

(C) APPLICATION.—A State that wishes to be awarded a planning grant under this paragraph shall, not later than 60 days after the date on which the notice of funding availability with respect to the grant is released, submit to the Assistant Secretary an application, in a format to be determined by the Assistant Secretary, that contains the following materials:

(i) A description of the entity selected to serve as the administering entity for the State, as described in subsection (b).

Certification.

(ii) A certification from the State that, not later than 1 year after the date on which the Assistant Secretary awards the planning grant to the State, the administering entity for that State shall develop a State Digital Equity Plan under this subsection, which—

(I) the administering entity shall submit to the Assistant Secretary; and

Compliance.

(II) shall comply with the requirements of this subsection, including the requirement under paragraph (2)(B).

(iii) The assurances required under subsection (e).

(D) AWARDS.—

Determination.

(i) AMOUNT OF GRANT.—A planning grant awarded to an eligible State under this paragraph shall be determined according to the formula under subsection (d)(3)(A)(i).

(ii) DURATION.—

(I) IN GENERAL.—Except as provided in subclause (II), with respect to a planning grant awarded to an eligible State under this paragraph, the State shall expend the grant funds during the 1-year period beginning on the date on which the State is awarded the grant funds.

Extension.

(II) EXCEPTION.—The Assistant Secretary may grant an extension of not longer than 180 days with respect to the requirement under subclause (I).

(iii) CHALLENGE MECHANISM.—The Assistant Secretary shall ensure that any eligible State to which a planning grant is awarded under this paragraph may appeal or otherwise challenge in a timely fashion the amount of the grant awarded to the State, as determined under clause (i).

(E) USE OF FUNDS.—An eligible State to which a planning grant is awarded under this paragraph shall, through the administering entity for that State, use the grant funds only for the following purposes:

(i) To develop the State Digital Equity Plan of the State under this subsection.

(ii)(I) Subject to subclause (II), to make subgrants to any of the entities described in paragraph (1)(D) to assist in the development of the State Digital Equity Plan of the State under this subsection.

(II) If the administering entity for a State makes a subgrant described in subclause (I), the administering entity shall, with respect to the subgrant, provide to the State the assurances required under subsection (e).

(d) STATE CAPACITY GRANTS.—

(1) IN GENERAL.—Beginning not later than 2 years after the date on which the Assistant Secretary begins awarding planning grants under subsection (c)(3), the Assistant Secretary shall each year award grants to eligible States to support—

(A) the implementation of the State Digital Equity Plans of those States; and

(B) digital inclusion activities in those States.

(2) APPLICATION.—A State that wishes to be awarded a grant under this subsection shall, not later than 60 days after the date on which the notice of funding availability with respect to the grant is released, submit to the Assistant Secretary an application, in a format to be determined by the Assistant Secretary, that contains the following materials:

(A) A description of the entity selected to serve as the administering entity for the State, as described in subsection (b).

(B) The State Digital Equity Plan of that State, as described in subsection (c).

(C) A certification that the State, acting through the administering entity for the State, shall—

(i) implement the State Digital Equity Plan of the State; and

(ii) make grants in a manner that is consistent with the aims of the Plan described in clause (i).

(D) The assurances required under subsection (e).

(E) In the case of a State to which the Assistant Secretary has previously awarded a grant under this subsection, any amendments to the State Digital Equity Plan of that State, as compared with the State Digital Equity Plan of the State previously submitted.

(3) AWARDS.—

(A) AMOUNT OF GRANT.—

(i) FORMULA.—Subject to clauses (ii), (iii), and (iv), the Assistant Secretary shall calculate the amount of a grant awarded to an eligible State under this subsection in accordance with the following criteria, using the best available data for all States for the fiscal year in which the grant is awarded:

(I) 50 percent of the total grant amount shall be based on the population of the eligible State

Deadline.

Certification.

Criteria.

in proportion to the total population of all eligible States.

(II) 25 percent of the total grant amount shall be based on the number of individuals in the eligible State who are members of covered populations in proportion to the total number of individuals in all eligible States who are members of covered populations.

Determinations.

(III) 25 percent of the total grant amount shall be based on the comparative lack of availability and adoption of broadband in the eligible State in proportion to the lack of availability and adoption of broadband of all eligible States, which shall be determined according to data collected from—

(aa) the annual inquiry of the Federal Communications Commission conducted under section 706(b) of the Telecommunications Act of 1996 (47 U.S.C. 1302(b));

(bb) the American Community Survey or, if necessary, other data collected by the Bureau of the Census;

(cc) the NTIA Internet Use Survey, which is administered as the Computer and Internet Use Supplement to the Current Population Survey of the Bureau of the Census; and

(dd) any other source that the Assistant Secretary, after appropriate notice and opportunity for public comment, determines to be appropriate.

(ii) MINIMUM AWARD.—The amount of a grant awarded to an eligible State under this subsection in a fiscal year shall be not less than 0.5 percent of the total amount made available to award grants to eligible States for that fiscal year.

Distribution.

(iii) ADDITIONAL AMOUNTS.—If, after awarding planning grants to States under subsection (c)(3) and capacity grants to eligible States under this subsection in a fiscal year, there are amounts remaining to carry out this section, the Assistant Secretary shall distribute those amounts—

(I) to eligible States to which the Assistant Secretary has awarded grants under this subsection for that fiscal year; and

(II) in accordance with the formula described in clause (i).

Puerto Rico.

(iv) DATA UNAVAILABLE.—If, in a fiscal year, the Commonwealth of Puerto Rico (referred to in this clause as "Puerto Rico") is an eligible State and specific data for Puerto Rico is unavailable for a factor described in subclause (I), (II), or (II) of clause (i), the Assistant Secretary shall use the median data point with respect to that factor among all eligible States and assign it to Puerto Rico for the purposes of making any calculation under that clause for that fiscal year.

Effective date.

(B) DURATION.—With respect to a grant awarded to an eligible State under this subsection, the eligible State shall expend the grant funds during the 5-year period

beginning on the date on which the eligible State is awarded the grant funds.

(C) CHALLENGE MECHANISM.—The Assistant Secretary shall ensure that any eligible State to which a grant is awarded under this subsection may appeal or otherwise challenge in a timely fashion the amount of the grant awarded to the State, as determined under subparagraph (A).

(D) USE OF FUNDS.—The administering entity for an eligible State to which a grant is awarded under this subsection shall use the grant amounts for the following purposes:

(i)(I) Subject to subclause (II), to update or maintain the State Digital Equity Plan of the State.

(II) An administering entity for an eligible State to which a grant is awarded under this subsection may use not more than 20 percent of the amount of the grant for the purpose described in subclause (I).

(ii) To implement the State Digital Equity Plan of the State.

(iii)(I) Subject to subclause (II), to award a grant to any entity that is described in section 60305(b) and is located in the eligible State in order to—

(aa) assist in the implementation of the State Digital Equity Plan of the State;

(bb) pursue digital inclusion activities in the State consistent with the State Digital Equity Plan of the State; and

(cc) report to the State regarding the digital inclusion activities of the entity.

(II) Before an administering entity for an eligible State may award a grant under subclause (I), the administering entity shall require the entity to which the grant is awarded to certify that— <span style="float:right">Requirement.<br>Certification.</span>

(aa) the entity shall carry out the activities required under items (aa), (bb), and (cc) of that subclause;

(bb) the receipt of the grant shall not result in unjust enrichment of the entity; and

(cc) the entity shall cooperate with any evaluation— <span style="float:right">Evaluation.</span>

(AA) of any program that relates to a grant awarded to the entity; and

(BB) that is carried out by or for the administering entity, the Assistant Secretary, or another Federal official.

(iv)(I) Subject to subclause (II), to evaluate the efficacy of the efforts funded by grants made under clause (iii). <span style="float:right">Evaluation.</span>

(II) An administering entity for an eligible State to which a grant is awarded under this subsection may use not more than 5 percent of the amount of the grant for a purpose described in subclause (I).

(v)(I) Subject to subclause (II), for the administrative costs incurred in carrying out the activities described in clauses (i) through (iv).

135 STAT. 1220          PUBLIC LAW 117–58—NOV. 15, 2021

(II) An administering entity for an eligible State to which a grant is awarded under this subsection may use not more than 3 percent of the amount of the grant for a purpose described in subclause (I).

(e) ASSURANCES.—When applying for a grant under this section, a State shall include in the application for that grant assurances that—

(1) if an entity described in section 60305(b) is awarded grant funds under this section (referred to in this subsection as a "covered recipient"), provide that—

(A) the covered recipient shall use the grant funds in accordance with any applicable statute, regulation, and application procedure;

(B) the administering entity for that State shall adopt and use proper methods of administering any grant that the covered recipient is awarded, including by—

(i) enforcing any obligation imposed under law on any agency, institution, organization, or other entity that is responsible for carrying out the program to which the grant relates;

(ii) correcting any deficiency in the operation of a program to which the grant relates, as identified through an audit or another monitoring or evaluation procedure; and

Procedures.

(iii) adopting written procedures for the receipt and resolution of complaints alleging a violation of law with respect to a program to which the grant relates; and

Evaluation.

(C) the administering entity for that State shall cooperate in carrying out any evaluation—

(i) of any program that relates to a grant awarded to the covered recipient; and

(ii) that is carried out by or for the Assistant Secretary or another Federal official;

(2) the administering entity for that State shall—

(A) use fiscal control and fund accounting procedures that ensure the proper disbursement of, and accounting for, any Federal funds that the State is awarded under this section;

Reports.

(B) submit to the Assistant Secretary any reports that may be necessary to enable the Assistant Secretary to perform the duties of the Assistant Secretary under this section;

Records.
Determination.

(C) maintain any records and provide any information to the Assistant Secretary, including those records, that the Assistant Secretary determines is necessary to enable the Assistant Secretary to perform the duties of the Assistant Secretary under this section; and

Public comment.

(D) with respect to any significant proposed change or amendment to the State Digital Equity Plan for the State, make the change or amendment available for public comment in accordance with subsection (c)(2); and

Compliance.

(3) the State, before submitting to the Assistant Secretary the State Digital Equity Plan of the State, has complied with the requirements of subsection (c)(2).

(f) TERMINATION OF GRANT.—

(1) IN GENERAL.—The Assistant Secretary shall terminate a grant awarded to an eligible State under this section if, after notice to the State and opportunity for a hearing, the Assistant Secretary—

(A) presents to the State a rationale and supporting information that clearly demonstrates that—

(i) the grant funds are not contributing to the development or execution of the State Digital Equity Plan of the State, as applicable; and

(ii) the State is not upholding assurances made by the State to the Assistant Secretary under subsection (e); and

(B) determines that the grant is no longer necessary to achieve the original purpose for which Assistant Secretary awarded the grant.

<span style="float:right">Determination.</span>

(2) REDISTRIBUTION.—If the Assistant Secretary, in a fiscal year, terminates a grant under paragraph (1), the Assistant Secretary shall redistribute the unspent grant amounts—

(A) to eligible States to which the Assistant Secretary has awarded grants under subsection (d) for that fiscal year; and

(B) in accordance with the formula described in subsection (d)(3)(A)(i).

(g) REPORTING AND INFORMATION REQUIREMENTS; INTERNET DISCLOSURE.—The Assistant Secretary—

(1) shall—

(A) require any entity to which a grant, including a subgrant, is awarded under this section to publicly report, for each year during the period described in subsection (c)(3)(D)(ii) or (d)(3)(B), as applicable, with respect to the grant, and in a format specified by the Assistant Secretary, on—

<span style="float:right">Public<br>information.</span>

(i) the use of that grant by the entity;

(ii) the progress of the entity towards fulfilling the objectives for which the grant was awarded; and

(iii) the implementation of the State Digital Equity Plan of the State;

(B) establish appropriate mechanisms to ensure that each eligible State to which a grant is awarded under this section—

(i) uses the grant amounts in an appropriate manner; and

(ii) complies with all terms with respect to the use of the grant amounts; and

<span style="float:right">Compliance.</span>

(C) create and maintain a fully searchable database, which shall be accessible on the internet at no cost to the public, that contains, at a minimum—

<span style="float:right">Database.<br>Web posting.</span>

(i) the application of each State that has applied for a grant under this section;

(ii) the status of each application described in clause (i);

(iii) each report submitted by an entity under subparagraph (A);

<span style="float:right">Reports.</span>

(iv) a record of public comments made regarding the State Digital Equity Plan of a State, as well as any written responses to or actions taken as a result of those comments; and

<span style="float:right">Record.</span>

(v) any other information that is sufficient to allow the public to understand and monitor grants awarded under this section; and

(2) may establish additional reporting and information requirements for any recipient of a grant under this section.

(h) SUPPLEMENT NOT SUPPLANT.—A grant or subgrant awarded under this section shall supplement, not supplant, other Federal or State funds that have been made available to carry out activities described in this section.

Contracts.

(i) SET ASIDES.—From amounts made available in a fiscal year to carry out the Program, the Assistant Secretary shall reserve—

(1) not more than 5 percent for the implementation and administration of the Program, which shall include—

(A) providing technical support and assistance, including ensuring consistency in data reporting;

(B) providing assistance to—

(i) States, or administering entities for States, to prepare the applications of those States; and

(ii) administering entities with respect to grants awarded under this section; and

(C) developing the report required under section 60306(a);

Native Americans.

(2) not less than 5 percent to award grants to, or enter into contracts or cooperative agreements with, Indian Tribes, Alaska Native entities, and Native Hawaiian organizations to allow those tribes, entities, and organizations to carry out the activities described in this section; and

Territories.

(3) not less than 1 percent to award grants to, or enter into contracts or cooperative agreements with, the United States Virgin Islands, Guam, American Samoa, the Commonwealth of the Northern Mariana Islands, and any other territory or possession of the United States that is not a State to enable those entities to carry out the activities described in this section.

(j) RULES.—The Assistant Secretary may prescribe such rules as may be necessary to carry out this section.

(k) AUTHORIZATION OF APPROPRIATIONS.—There are authorized to be appropriated—

(1) $60,000,000 for the award of grants under subsection (c)(3), which shall remain available until expended;

(2) for the award of grants under subsection (d)—

(A) $240,000,000 for fiscal year 2022; and

(B) $300,000,000 for each of fiscal years 2023 through 2026; and

(3) such sums as may be necessary to carry out this section for each fiscal year after the end of the 5-fiscal year period described in paragraph (2).

47 USC 1724.

**SEC. 60305. DIGITAL EQUITY COMPETITIVE GRANT PROGRAM.**

(a) ESTABLISHMENT.—

Deadline.

(1) IN GENERAL.—Not later than 30 days after the date on which the Assistant Secretary begins awarding grants under section 60304(d), and not before that date, the Assistant Secretary shall establish in the Department of Commerce the Digital Equity Competitive Grant Program (referred to in this section as the "Program"), the purpose of which is to award grants to support efforts to achieve digital equity, promote

digital inclusion activities, and spur greater adoption of broadband among covered populations.

(2) CONSULTATION; NO CONFLICT.—In establishing the Program under paragraph (1), the Assistant Secretary—

(A) may consult a State with respect to—

(i) the identification of groups described in subparagraphs (A) through (H) of section 60302(8) located in that State; and

(ii) the allocation of grant funds within that State for projects in or affecting the State; and

(B) shall—

(i) consult with—

(I) the Secretary of Agriculture;

(II) the Secretary of Housing and Urban Development;

(III) the Secretary of Education;

(IV) the Secretary of Labor;

(V) the Secretary of Health and Human Services;

(VI) the Secretary of Veterans Affairs;

(VII) the Secretary of the Interior;

(VIII) the Federal Communications Commission;

(IX) the Federal Trade Commission;

(X) the Director of the Institute of Museum and Library Services;

(XI) the Administrator of the Small Business Administration;

(XII) the Federal Co-Chair of the Appalachian Regional Commission; and

(XIII) the head of any other agency that the Assistant Secretary determines to be appropriate; and

Determination.

(ii) ensure that the Program complements and enhances, and does not conflict with, other Federal broadband initiatives and programs.

(b) ELIGIBILITY.—The Assistant Secretary may award a grant under the Program to any of the following entities if the entity is not serving, and has not served, as the administering entity for a State under section 60304(b):

(1) A political subdivision, agency, or instrumentality of a State, including an agency of a State that is responsible for administering or supervising adult education and literacy activities, or for providing public housing, in the State.

(2) An Indian Tribe, an Alaska Native entity, or a Native Hawaiian organization.

(3) A foundation, corporation, institution, or association that is—

(A) a not-for-profit entity; and

(B) not a school.

(4) A community anchor institution.

(5) A local educational agency.

(6) An entity that carries out a workforce development program.

(7) A partnership between any of the entities described in paragraphs (1) through (6).

(8) A partnership between—

(A) an entity described in any of paragraphs (1) through (6); and

(B) an entity that—

(i) the Assistant Secretary, by rule, determines to be in the public interest; and

(ii) is not a school.

(c) APPLICATION.—An entity that wishes to be awarded a grant under the Program shall submit to the Assistant Secretary an application—

(1) at such time, in such form, and containing such information as the Assistant Secretary may require; and

(2) that—

(A) provides a detailed explanation of how the entity will use any grant amounts awarded under the Program to carry out the purposes of the Program in an efficient and expeditious manner;

(B) identifies the period in which the applicant will expend the grant funds awarded under the Program;

(C) includes—

(i) a justification for the amount of the grant that the applicant is requesting; and

(ii) for each fiscal year in which the applicant will expend the grant funds, a budget for the activities that the grant funds will support;

(D) demonstrates to the satisfaction of the Assistant Secretary that the entity—

(i) is capable of carrying out—

(I) the project or function to which the application relates; and

(II) the activities described in subsection (h)—

(aa) in a competent manner; and

(bb) in compliance with all applicable Federal, State, and local laws; and

(ii) if the applicant is an entity described in subsection (b)(1), shall appropriate or otherwise unconditionally obligate from non-Federal sources funds that are necessary to meet the requirements of subsection (e);

(E) discloses to the Assistant Secretary the source and amount of other Federal, State, or outside funding sources from which the entity receives, or has applied for, funding for activities or projects to which the application relates; and

(F) provides—

(i) the assurances that are required under subsection (f); and

(ii) an assurance that the entity shall follow such additional procedures as the Assistant Secretary may require to ensure that grant funds are used and accounted for in an appropriate manner.

(d) AWARD OF GRANTS.—

(1) FACTORS CONSIDERED IN AWARD OF GRANTS.—In deciding whether to award a grant under the Program, the Assistant Secretary shall, to the extent practicable, consider—

(A) whether an application shall, if approved—

(i) increase internet access and the adoption of broadband among covered populations to be served by the applicant; and

(ii) not result in unjust enrichment;

(B) the comparative geographic diversity of the application in relation to other eligible applications; and

(C) the extent to which an application may duplicate or conflict with another program.

(2) USE OF FUNDS.—

(A) IN GENERAL.—In addition to the activities required under subparagraph (B), an entity to which the Assistant Secretary awards a grant under the Program shall use the grant amounts to support not less than 1 of the following activities:

(i) To develop and implement digital inclusion activities that benefit covered populations.

(ii) To facilitate the adoption of broadband by covered populations in order to provide educational and employment opportunities to those populations.

(iii) To implement, consistent with the purposes of this title—

(I) training programs for covered populations that cover basic, advanced, and applied skills; or

(II) other workforce development programs.

(iv) To make available equipment, instrumentation, networking capability, hardware and software, or digital network technology for broadband services to covered populations at low or no cost.

(v) To construct, upgrade, expend, or operate new or existing public access computing centers for covered populations through community anchor institutions.

(vi) To undertake any other project and activity that the Assistant Secretary finds to be consistent with the purposes for which the Program is established.

(B) EVALUATION.—

(i) IN GENERAL.—An entity to which the Assistant Secretary awards a grant under the Program shall use not more than 10 percent of the grant amounts to measure and evaluate the activities supported with the grant amounts.

(ii) SUBMISSION TO ASSISTANT SECRETARY.—An entity to which the Assistant Secretary awards a grant under the Program shall submit to the Assistant Secretary each measurement and evaluation performed under clause (i)— *Deadlines.*

(I) in a manner specified by the Assistant Secretary;

(II) not later than 15 months after the date on which the entity is awarded the grant amounts; and

(III) annually after the submission described in subclause (II) for any year in which the entity expends grant amounts.

(C) ADMINISTRATIVE COSTS.—An entity to which the Assistant Secretary awards a grant under the Program may use not more than 10 percent of the amount of the

135 STAT. 1226        PUBLIC LAW 117–58—NOV. 15, 2021

Effective dates.

grant for administrative costs in carrying out any of the activities described in subparagraph (A).

(D) TIME LIMITATIONS.—With respect to a grant awarded to an entity under the Program, the entity—

(i) except as provided in clause (ii), shall expend the grant amounts during the 4-year period beginning on the date on which the entity is awarded the grant amounts; and

(ii) during the 1-year period beginning on the date that is 4 years after the date on which the entity is awarded the grant amounts, may continue to measure and evaluate the activities supported with the grant amounts, as required under subparagraph (B).

(e) FEDERAL SHARE.—

(1) IN GENERAL.—Except as provided in paragraph (2), the Federal share of any project for which the Assistant Secretary awards a grant under the Program may not exceed 90 percent.

Waiver.

(2) EXCEPTION.—The Assistant Secretary may grant a waiver with respect to the limitation on the Federal share of a project described in paragraph (1) if—

Petitions.

(A) the applicant with respect to the project petitions the Assistant Secretary for the waiver; and

Determination.

(B) the Assistant Secretary determines that the petition described in subparagraph (A) demonstrates financial need.

(f) ASSURANCES.—When applying for a grant under this section, an entity shall include in the application for that grant assurances that the entity shall—

(1) use any grant funds that the entity is awarded—

(A) in accordance with any applicable statute, regulation, and application procedure; and

(B) to the extent required under applicable law;

(2) adopt and use proper methods of administering any grant that the entity is awarded, including by—

(A) enforcing any obligation imposed under law on any agency, institution, organization, or other entity that is responsible for carrying out a program to which the grant relates;

(B) correcting any deficiency in the operation of a program to which the grant relates, as identified through an audit or another monitoring or evaluation procedure; and

Procedures.

(C) adopting written procedures for the receipt and resolution of complaints alleging a violation of law with respect to a program to which the grant relates;

(3) cooperate with respect to any evaluation—

(A) of any program that relates to a grant awarded to the entity; and

(B) that is carried out by or for the Assistant Secretary or another Federal official;

(4) use fiscal control and fund accounting procedures that ensure the proper disbursement of, and accounting for, any Federal funds that the entity is awarded under the Program;

Reports.

(5) submit to the Assistant Secretary any reports that may be necessary to enable the Assistant Secretary to perform the duties of the Assistant Secretary under the Program; and

(6) maintain any records and provide any information to the Assistant Secretary, including those records, that the Assistant Secretary determines is necessary to enable the Assistant Secretary to perform the duties of the Assistant Secretary under the Program.

*Records.*
*Determination.*

(g) DEOBLIGATION OR TERMINATION OF GRANT.—In addition to other authority under applicable law, the Assistant Secretary may—

(1) deobligate or terminate a grant awarded to an entity under this section if, after notice to the entity and opportunity for a hearing, the Assistant Secretary—

(A) presents to the entity a rationale and supporting information that clearly demonstrates that—

(i) the grant funds are not being used in a manner that is consistent with the application with respect to the grant submitted by the entity under subsection (c); and

(ii) the entity is not upholding assurances made by the entity to the Assistant Secretary under subsection (f); and

(B) determines that the grant is no longer necessary to achieve the original purpose for which Assistant Secretary awarded the grant; and

*Determination.*

(2) with respect to any grant funds that the Assistant Secretary deobligates or terminates under paragraph (1), competitively award the grant funds to another applicant, consistent with the requirements of this section.

(h) REPORTING AND INFORMATION REQUIREMENTS; INTERNET DISCLOSURE.—The Assistant Secretary—

(1) shall—

(A) require any entity to which the Assistant Secretary awards a grant under the Program to, for each year during the period described in subsection (d)(2)(D) with respect to the grant, submit to the Assistant Secretary a report, in a format specified by the Assistant Secretary, regarding—

(i) the amount of the grant;

(ii) the use by the entity of the grant amounts; and

(iii) the progress of the entity towards fulfilling the objectives for which the grant was awarded;

(B) establish mechanisms to ensure appropriate use of, and compliance with respect to all terms regarding, grant funds awarded under the Program;

(C) create and maintain a fully searchable database, which shall be accessible on the internet at no cost to the public, that contains, at a minimum—

*Database.*
*Web posting.*

(i) a list of each entity that has applied for a grant under the Program;

*List.*

(ii) a description of each application described in clause (i), including the proposed purpose of each grant described in that clause;

(iii) the status of each application described in clause (i), including whether the Assistant Secretary has awarded a grant with respect to the application and, if so, the amount of the grant;

(iv) each report submitted by an entity under subparagraph (A); and

*Reports.*

135 STAT. 1228          PUBLIC LAW 117–58—NOV. 15, 2021

Public information.

(v) any other information that is sufficient to allow the public to understand and monitor grants awarded under the Program; and

(D) ensure that any entity with respect to which an award is deobligated or terminated under subsection (g) may, in a timely manner, appeal or otherwise challenge that deobligation or termination, as applicable; and

(2) may establish additional reporting and information requirements for any recipient of a grant under the Program.

(i) SUPPLEMENT NOT SUPPLANT.—A grant awarded to an entity under the Program shall supplement, not supplant, other Federal or State funds that have been made available to the entity to carry out activities described in this section.

Contracts.

(j) SET ASIDES.—From amounts made available in a fiscal year to carry out the Program, the Assistant Secretary shall reserve—

(1) 5 percent for the implementation and administration of the Program, which shall include—

(A) providing technical support and assistance, including ensuring consistency in data reporting;

(B) providing assistance to entities to prepare the applications of those entities with respect to grants awarded under this section;

(C) developing the report required under section 60306(a); and

(D) conducting outreach to entities that may be eligible to be awarded a grant under the Program regarding opportunities to apply for such a grant;

Native Americans.

(2) 5 percent to award grants to, or enter into contracts or cooperative agreements with, Indian Tribes, Alaska Native entities, and Native Hawaiian organizations to allow those tribes, entities, and organizations to carry out the activities described in this section; and

Territories.

(3) 1 percent to award grants to, or enter into contracts or cooperative agreements with, the United States Virgin Islands, Guam, American Samoa, the Commonwealth of the Northern Mariana Islands, and any other territory or possession of the United States that is not a State to enable those entities to carry out the activities described in this section.

(k) RULES.—The Assistant Secretary may prescribe such rules as may be necessary to carry out this section.

Time periods.

(l) AUTHORIZATION OF APPROPRIATIONS.—There are authorized to be appropriated to carry out this section—

(1) $250,000,000 for each of the first 5 fiscal years in which funds are made available to carry out this section; and

(2) such sums as may be necessary for each fiscal year after the end of the 5-fiscal year period described in paragraph (1).

47 USC 1725.

**SEC. 60306. POLICY RESEARCH, DATA COLLECTION, ANALYSIS AND MODELING, EVALUATION, AND DISSEMINATION.**

(a) REPORTING REQUIREMENTS.—

(1) IN GENERAL.—Not later than 1 year after the date on which the Assistant Secretary begins awarding grants under section 60304(d)(1), and annually thereafter, the Assistant Secretary shall—

PUBLIC LAW 117–58—NOV. 15, 2021          135 STAT. 1229

(A) submit to the appropriate committees of Congress a report that documents, for the year covered by the report—

(i) the findings of each evaluation conducted under subparagraph (B);

(ii) a list of each grant awarded under each covered program, which shall include— *List.*

(I) the amount of each such grant;

(II) the recipient of each such grant; and

(III) the purpose for which each such grant was awarded;

(iii) any deobligation, termination, or modification of a grant awarded under the covered programs, which shall include a description of the subsequent usage of any funds to which such an action applies; and

(iv) each challenge made by an applicant for, or a recipient of, a grant under the covered programs and the outcome of each such challenge; and

(B) conduct evaluations of the activities carried out under the covered programs, which shall include an evaluation of—

(i) whether eligible States to which grants are awarded under the program established under section 60304 are—

(I) abiding by the assurances made by those States under subsection (e) of that section;

(II) meeting, or have met, the stated goals of the Digital Equity Plans developed by the States under subsection (c) of that section;

(III) satisfying the requirements imposed by the Assistant Secretary on those States under subsection (g) of that section; and

(IV) in compliance with any other rules, requirements, or regulations promulgated by the Assistant Secretary in implementing that program; and

(ii) whether entities to which grants are awarded under the program established under section 60305 are—

(I) abiding by the assurances made by those entities under subsection (f) of that section;

(II) meeting, or have met, the stated goals of those entities with respect to the use of the grant amounts;

(III) satisfying the requirements imposed by the Assistant Secretary on those States under subsection (h) of that section; and

(IV) in compliance with any other rules, requirements, or regulations promulgated by the Assistant Secretary in implementing that program.

(2) PUBLIC AVAILABILITY.—The Assistant Secretary shall make each report submitted under paragraph (1)(A) publicly available in an online format that— *Web posting.*

(A) facilitates access and ease of use;

(B) is searchable; and

(C) is accessible—

(i) to individuals with disabilities; and

135 STAT. 1230          PUBLIC LAW 117–58—NOV. 15, 2021

(ii) in languages other than English.

Determination.

(b) AUTHORITY TO CONTRACT AND ENTER INTO OTHER ARRANGE-MENTS.—The Assistant Secretary may award grants and enter into contracts, cooperative agreements, and other arrangements with Federal agencies, public and private organizations, and other entities with expertise that the Assistant Secretary determines appropriate in order to—

(1) evaluate the impact and efficacy of activities supported by grants awarded under the covered programs; and

(2) develop, catalog, disseminate, and promote the exchange of best practices, both with respect to and independent of the covered programs, in order to achieve digital equity.

(c) CONSULTATION AND PUBLIC ENGAGEMENT.—In carrying out subsection (a), and to further the objectives described in paragraphs (1) and (2) of subsection (b), the Assistant Secretary shall conduct ongoing collaboration and consult with—

(1) the Secretary of Agriculture;

(2) the Secretary of Housing and Urban Development;

(3) the Secretary of Education;

(4) the Secretary of Labor;

(5) the Secretary of Health and Human Services;

(6) the Secretary of Veterans Affairs;

(7) the Secretary of the Interior;

(8) the Federal Communications Commission;

(9) the Federal Trade Commission;

(10) the Director of the Institute of Museum and Library Services;

(11) the Administrator of the Small Business Administration;

(12) the Federal Co-Chair of the Appalachian Regional Commission;

(13) State agencies and governors of States (or equivalent officials);

(14) entities serving as administering entities for States under section 60304(b);

(15) national, State, tribal, and local organizations that provide digital inclusion, digital equity, or digital literacy services;

(16) researchers, academics, and philanthropic organizations; and

Determination.

(17) other agencies, organizations (including international organizations), entities (including entities with expertise in the fields of data collection, analysis and modeling, and evaluation), and community stakeholders, as determined appropriate by the Assistant Secretary.

(d) TECHNICAL SUPPORT AND ASSISTANCE.—The Assistant Secretary shall provide technical support and assistance, assistance to entities to prepare the applications of those entities with respect to grants awarded under the covered programs, and other resources, to the extent practicable, to ensure consistency in data reporting and to meet the objectives of this section.

(e) AUTHORIZATION OF APPROPRIATIONS.—There are authorized to be appropriated such sums as may be necessary to carry out this section, which shall remain available until expended.

47 USC 1726.

**SEC. 60307. GENERAL PROVISIONS.**

(a) NONDISCRIMINATION.—

(1) IN GENERAL.—No individual in the United States may, on the basis of actual or perceived race, color, religion, national origin, sex, gender identity, sexual orientation, age, or disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity that is funded in whole or in part with funds made available to carry out this title.

(2) ENFORCEMENT.—The Assistant Secretary shall effectuate paragraph (1) with respect to any program or activity described in that paragraph by issuing regulations and taking actions consistent with section 602 of the Civil Rights Act of 1964 (42 U.S.C. 2000d–1).

(3) JUDICIAL REVIEW.—Judicial review of an action taken by the Assistant Secretary under paragraph (2) shall be available to the extent provided in section 603 of the Civil Rights Act of 1964 (42 U.S.C. 2000d–2).

(b) TECHNOLOGICAL NEUTRALITY.—The Assistant Secretary shall, to the extent practicable, carry out this title in a technologically neutral manner.

(c) AUDIT AND OVERSIGHT.—Beginning in the first fiscal year in which amounts are made available to carry out an activity authorized under this title, and in each of the 4 fiscal years thereafter, there is authorized to be appropriated to the Office of Inspector General for the Department of Commerce $1,000,000 for audits and oversight of funds made available to carry out this title, which shall remain available until expended.

Effective date.
Time periods.
Appropriation
authorization.

# TITLE IV—ENABLING MIDDLE MILE BROADBAND INFRASTRUCTURE

**SEC. 60401. ENABLING MIDDLE MILE BROADBAND INFRASTRUCTURE.**

47 USC 1741.

(a) DEFINITIONS.—In this section:

(1) ANCHOR INSTITUTION.—The term "anchor institution" means a school, library, medical or healthcare provider, community college or other institution of higher education, or other community support organization or entity.

(2) ASSISTANT SECRETARY.—The term "Assistant Secretary" means the Assistant Secretary of Commerce for Communications and Information.

(3) COMMISSION.—The term "Commission" means the Federal Communications Commission.

(4) ELIGIBLE ENTITY.—The term "eligible entity" means—

(A) a State, political subdivision of a State, Tribal government, technology company, electric utility, utility cooperative, public utility district, telecommunications company, telecommunications cooperative, nonprofit foundation, nonprofit corporation, nonprofit institution, nonprofit association, regional planning counsel, Native entity, or economic development authority; or

(B) a partnership of 2 or more entities described in subparagraph (A).

(5) FCC FIXED BROADBAND MAP.—The term "FCC fixed broadband map" means the map created by the Commission under section 802(c)(1)(B) of the Communications Act of 1934 (47 U.S.C. 642(c)(1)(B)).