# Exhibit F



June 6, 2025

**CONFIDENTIAL**

**VIA EMAIL**

Mercedes Martinez-Crowe
Grants Officer
National Institute of Standards and Technology
100 Bureau Drive, Mail Stop 1650
Gaithersburg, MD 20899-1650
mercedes.martinez-crowe@nist.gov

Darren Olson
Grants Management Officer
National Institute of Standards and Technology
325 Broadway
Boulder, CO 80305
darren.olson@nist.gov

Juan Sanchez
Federal Program Officer
National Telecommunications and Information Administration
1401 Constitution Avenue, NW
Washington, D.C. 20230
jsanchez@ntia.gov

> Re:    Termination Review – NTIA Award Number 39-32-DC150: Digital
>        Equity Competitive Grant

Dear Mr. Sanchez, Ms. Martinez-Crowe, and Mr. Olson:

The National Digital Inclusion Alliance ("NDIA") received a notice dated May 9, 2025, from the National Institute of Standards and Technology ("NIST"), servicing for the National Telecommunications and Information Administration ("NTIA"), terminating Grant Award No. 39-32-DC150, "Digital Equity Competitive Grant" (the "Award") due to the assertion that the Award purportedly is "unconstitutional" and was otherwise allegedly "created with, and administered using, impermissible and unconstitutional racial preferences."

Docusign Envelope ID: C754648B-D1BC-41B7-AC54-F2C3B2EDD473    Case 1:25-cv-03606-JDB    Document 32-10    Filed 02/06/26    Page 3 of 9

As detailed below, NIST's purported termination is legally unsupportable for numerous reasons, including because: (1) the action violates the Administrative Procedure Act; (2) it violates congressional priorities (including those mandated under the Digital Equity Act) and Constitutional separation of powers; and (3) it is procedurally defective.  Accordingly, NDIA appeals NIST's May 9 notice and respectfully requests that NIST rescind the termination and reinstate the Award because the termination is contrary to law.

I.    **The Award does not involve impermissible and unconstitutional racial preferences.**

NDIA received the Award under the "Digital Equity Competitive Grant Program," which was a mandatory program created under the Digital Equity Act of 2021.  P.L. 117-58, div. F, title III, §§ 60301-60307 (Nov. 15, 2021) 135 Stat. 1210-31, codified at 47 U.S.C. §§ 1721-26).  Congress passed the Act in response to its sense that "achieving digital equity is a matter of social and economic justice" worth pursuing.  47 U.S.C. § 1722(5).  The Act *required* the Department of Commerce ("Commerce") to create the "Digital Equity Competitive Grant Program," under which the Award was issued, to support the "State Digital Equity Capacity Grant Program."  *See* 47 U.S.C. § 1724(a)(1) ("Not later than 30 days after the date on which the Assistant Secretary begins awarding grants under section 1723(d) of this title [regarding the "State Digital Equity Capacity Grant Program"], and not before that date, the Assistant Secretary shall establish in the Department of Commerce the Digital Equity Competitive Grant Program").  As relevant to this Award, the Digital Equity Competitive Grant Program requires Commerce "to award grants to support efforts to achieve digital equity, promote digital inclusion activities, and spur greater adoption of broadband among covered populations[,]" *i.e.*, persons who are veterans, low-income, disabled or members of any racial or ethnic minority group, or persons who reside in a rural area, have low levels of literacy.  *Id.* at §§ 1724(a)(1), 1721(7)-(8).

This Award supports NDIA's efforts to address barriers to digital inclusion through a multi-faceted Digital Navigator Plus ("DN+") Program (the "Program").  Digital Navigators ("DNs") are professionally trained technology educators who teach underserved communities to effectively use the internet for education, work, healthcare, civic and social engagement, and technology resources.  Through the Award-supported DN+ Program, NDIA is to equip thirteen local DN programs in eleven states to scale their existing DN programs to better support clients and communities.  In sum, the Award-supported DN+ Program would serve over 30,000 community members in urban, rural, suburban, and tribal communities across the United States, most of whom are among the "covered populations" and are left out of the digital advancements.

Confidential and Proprietary Information Exempt from Release under FOIA

The Award aligns with the Digital Equity Competitive Grant Program's statutory purpose. *See* 47 U.S.C. § 1724. Specifically, the Award was deemed to meet at least one of the needs specified in statute:

- "develop and implement digital inclusion activities that benefit covered populations;"

- "facilitate the adoption of broadband by covered populations in order to provide educational and employment opportunities to those populations;"

- "to implement. . .training programs for covered populations that cover basic, advanced, and applied skills; or other workforce development programs;"

- "to make available equipment, instrumentation, networking capability, hardware and software, or digital network technology for broadband services to covered populations at low or no cost;" or

- "construct, upgrade, expend, or operate new or existing public access computing centered for covered populations through community anchor institutions."

*Id.* at § 1724(d)(2)(A). This Award meets these criteria because it would provide "covered populations" with, among other things, training and assistance in connecting to local computer networks, investment in digital inclusion programs, and technical support for health, education, and social needs. Accordingly, the Award is clearly consistent with NIST's statutory obligations and the stated program goals.

Further, and contrary to the May 9 notice, the Digital Equity Competitive Grant Program and this Award issued thereunder, are not discriminatory. The Act targets "equity," but seeks to provide groups that may be left out of the digital revolution with infrastructure and skills to use the internet. To that end, the Act makes clear that discrimination is not permitted. "No individual in the United States may, on the basis of actual or perceived race, color, religion, national origin, sex, gender identity, sexual orientation, age, or disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under" any Digital Equity Act program. *Id.* at § 1726(a)(1). Consistent with that law, the Award supports all "covered populations," including not only racial and ethnic minority groups, but also, for example, y rural and elderly populations. The May 9 notice did not articulate a reasonable basis to terminate this Award.

Confidential and Proprietary Information Exempt from Release under FOIA

## II. The termination action is arbitrary and contrary to law, in violation of the Administrative Procedure Act.

NIST's May 9 notice violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, because it summarily declares that the Award is "unconstitutional" and "no longer effectuates the program goals or priorities."[1] The termination notice offers no support or explanation for these conclusions.

Pursuant to the APA, an agency "must explain 'why it chose to do what it did'"; "conclusory statements will not do." *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) (emphasis added); *see also Butte Cnty., Cal. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010) ("The agency's statement must be one of 'reasoning'; it must not just be a 'conclusion'"). When an agency fails to "articulate a satisfactory explanation for its decision, including a rational connection between the facts found and the choice made," the decision is unsupported and must be set aside. *Dep't of Commerce v. New York*, 588 U.S. 752, 773 (2019). The reason for the requirement that an agency offer a reasoned explanation for its decision is simple: to allow the party adversely affected by that decision to challenge it.

Confirmation of the inadequacy for NIST's statements comes from the recent litigation involving grant terminations by the U.S. Department of Education ("Education"), where that agency similarly premised its terminations on the grounds that the grants in question "no longer effectuated agency priorities." *See Am. Ass'n of Colleges for Teacher Edu.v. McMahon*, 2025 WL 833917, *21 (D. Md. Mar. 17, 2025). The Court in *American Association of Colleges* rejected the justification—and required Education to reinstate grants—because it failed to provide "a satisfactory explanation of the facts found or the choice made" or "a rational connection between the two." *Id.* The Court explained the problem with Education's summary, perfunctory statements:

> The Termination Letter fails to mention or refer to data or information the Department considered, if any, in deciding that the Grant Programs no longer effectuate Department priorities. Further, the Department's use of a template or boilerplate letter issued to all Grant Recipients further strengthens Plaintiffs' argument that the Department did not consider individual, or any, data or information.

---

[1] Ironically, NIST's termination actions here are themselves unconstitutional violations of the First and Fifth Amendments to the U.S. Constitution because they are vague pronouncements, impermissibly restrict speech, and otherwise deny NDIA due process under law.

Confidential and Proprietary Information Exempt from Release under FOIA

*Id.* The Court noted Education's conclusory justification "render[ed] meaningless the right appeal" because "how does one draft a 'brief statement' of a 'disputed' fact when one has no earthly idea what has been asserted, if anything?" *Id.*

Similarly, in *RFE/RL, Inc. v. Lake*, 2025 WL 900481 (D.D.C. Mar. 25, 2025), the Court rejected an invocation of "agency priorities" as the basis for terminating grants issued to nonprofit news organizations. In so doing, the *RFE/RL* court explained, "[t]his conclusory statement, unsupported by any facts or reasoning, is not a 'satisfactory explanation' and offers no 'rational connection between the facts found and the choices made.'" *Id.* at *3.

The rationale from those cases is equally applicable here. NIST's termination notice declares the Award is "unconstitutional" and "no longer effectuates the program goals or priorities." But these conclusory statements are "unsupported by any facts or reasoning," and therefore, "offer no rational connection between the facts found and the choices made." *Id.* Because NIST's termination notice fails to comport with the baseline requirements of the APA, 5 U.S.C. § 707(2)(A), it is contrary to law, and NIST should rescind it.

## III. The termination violates the separation of powers established by the Constitution because the Award is not inconsistent with "program goals" or "agency priorities."

NIST's termination was also improper because it is unconstitutional. Where Congress has allocated funding for a specific purpose—as it did with the underlying Award—an agency may not discontinue that funding simply because it no longer agrees with that purpose. This is an independent violation of the APA. *See* 5 U.S.C. §§ 706(2)(B)-(C).

The Constitution gives Congress the sole powers to legislate and appropriate funds. U.S. Const. art. I § 8, cl. 1; *see also South Dakota v. Dole*, 483 U.S. 203, 206 (1987). Congress establishes agency priorities through authorization and appropriation statutes. Within this framework, "Congress sets the policy, not the [agency]," and "policy disagreement[]" with Congress's decision to fund the program this Award supports "is not a lawful ground for the [NIST] to decline to continue the congressionally mandated" program. *In re Aiken Cnty.*, 725 F.3d 255, 260 (D.C. Cir. 2013). Where, as here, the executive branch asserts policy priorities that are inconsistent with statutory authorization and Congress' funding decisions, those policies are ultra vires and violate the Constitution.

As discussed above, the Digital Equity Act of 2021 *required* the Department of Commerce to create the Digital Equity Competitive Grant Program, under which the

Confidential and Proprietary Information Exempt from Release under FOIA

Award was issued. *See* 47 U.S.C. § 1724(a)(1) ("Not later than 30 days after the date on which the Assistant Secretary begins awarding grants under section 1723(d) of this title [regarding the "State Digital Equity Capacity Grant Program"], and not before that date, the Assistant Secretary shall establish in the Department of Commerce the Digital Equity Competitive Grant Program"). Congress authorized $1.25 billion for this Grant Program. *Id.* at § 1724(l). To support the Digital Equity Act, Congress appropriated $2,750,000,000 for fiscal years 2022 through 2026, including $250,000,000 specifically for Digital Equity Competitive Grant Program in fiscal year 2025. P.L. 117-58, div. J, tit. III (Nov. 21, 2021) 135 Stat. 1354.

Against this statutory backdrop, Congress has not permitted NIST to impose new conditions on the Award, much less terminate the Award based upon an unsubstantiated claim of using "impermissible and unconstitutional racial preferences." These are grievous violations of the Constitution's separation of powers principles that require NIST to rescind the purported termination in the May 9 notice. Fundamentally, "[a]dministrative agencies are creatures of statute," and "accordingly possess only the authority that Congress has provided." *NFIB v. OSHA*, 595 U.S. 109, 117 (2022); *see also City of Arlington v. FCC*, 595 U.S. 290, 297 (2013) (finding that when an executive agency administers a federal statute, the agency's power to act is "authoritatively prescribed by Congress."). "It is no exaggeration to say that 'an agency literally has no power to act . . . unless and until Congress confers powers upon it.'" *New York v. Trump*, No. 25-cv-39, 2025 WL 357368, at *2 (D.R.I. Jan. 31, 2025) (citing *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986)). Moreover, "[a]ny action that an agency takes outside the bounds of its statutory authority is ultra vires." *City of Providence v. Barr*, 954 F.3d 23, 21 (1st Cir. 2020) (citing *City of Arlington*, 569 U.S. at 297).

Accordingly, NIST's purported termination usurped Congress' exclusive power to appropriate funds under Article I and exceeds the executive branch's authority under Article II of the Constitution. Where, as here, the ultra vires action places significant conditions on federal funding that Congress did not prescribe, the action is unconstitutional. "There is no provision in the Constitution that authorizes the President to enact, to amend, or to repeal statutes." *Clinton v. City of New York*, 524 U.S. 417, 438 (1998); *see also City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1238 (9th Cir. 2018). For this reason, NDIA requests that NIST rescind its termination of the Award.

**IV.     The termination notice is procedurally defective and violations the Digital Equity Act as well as the regulations governing NIST grant termination.**

Finally, the May 9 notice is procedurally defective, as it claims that the purported termination is "final and there is no right of administrative appeal." This purported

Confidential and Proprietary Information Exempt from Release under FOIA

recission of appeal rights violates 47 U.S.C. § 1724(g)(1), 2 C.F.R. § 1327.101, and 2 C.F.R. § 200.342, and thus is an independent violation of the APA, 5 U.S.C. § 706(2)(D).  First, under the Digital Equity Act, NIST is only permitted to "deobligate or terminate a grant. . .after notice to the entity and opportunity for a hearing."  47 U.S.C. § 1724(g)(1).  That notice and opportunity for a hearing must also demonstrate the permissible basis for grant termination:

> (i) the grant funds are not being used in a manner that is consistent with the application with respect to the grant submitted by the entity [in its application]; and

> (ii) the entity is not upholding assurances made by the entity to the Assistant Secretary under subsection (f) [i.e., assurances of compliance with laws and grant administration requirements]; and

> (B) determines that the grant is no longer necessary to achieve the original purpose for which [the] Assistant Secretary awarded the grant; . . .

47 U.S.C. § 1724(g)(1).  If NIST were able to make this showing, it would then still have to "competitively award the grant funds to another applicant" because the restrictions put in place by Congress remain attached to the funding.  *Id.* at § 1724(g)(2).  This means that NIST must spend any Digital Equity Act funds appropriated for this Award on the Digital Equity Competitive Grant Program.  NIST cannot simply choose to ignore its statutory obligations.

Second, NIST's parent agency, the Department of Commerce, adopted 2 CFR part 200 in its entirety.  2 C.F.R. § 1327.101.  As such, NIST must follow 2 C.F.R. § 200.342, which clearly states that a federal agency "must maintain written procedures for processing objections, hearings, and appeals," and "must provide the recipient with an opportunity to object and provide information challenging the action."  NIST has not met this standard here.

Consequently, NIST must provide NDIA an opportunity to appeal the termination and is prohibited from avoiding its requirement to do so under the regulations.  This is yet another reason why NIST's purported termination is contrary to law and should be rescinded.

Confidential and Proprietary Information Exempt from Release under FOIA

## V.    Conclusion

The NIST termination action here is contrary to the terms of the Award agreement, the Constitution, and well-established principles of administrative law.  NDIA therefore requests immediate recission of the May 9 notice and reinstatement of the Award.

Please do not hesitate to contact the undersigned if we can be of any further assistance in this process.

Very truly yours,

DocuSigned by:

486BC623D9814F9...

Angela Siefer
Executive Director

Confidential and Proprietary Information Exempt from Release under FOIA