**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| NATIONAL DIGITAL INCLUSION ALLIANCE,<br><br>               Plaintiff,<br><br>   v.<br><br>PRESIDENT DONALD J. TRUMP, *et al.*,<br><br>               Defendants. | No. 1:25-cv-03606-JDB |

<u>**PLAINTIFF'S SUPPLEMENTAL BRIEFING IN SUPPORT OF ITS OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**</u>

i

**TABLE OF CONTENTS**

I.      QUESTIONS OF FACT REMAIN REGARDING WHETHER THE DIGITAL EQUITY
        ACT'S COMPETITIVE GRANT PROGRAM CONTAINS A RACIAL
        CLASSIFICATION OR DISCRIMINATES BASED ON RACE. .................................... 1

II.     RESOLUTION AT THE PLEADING STAGE CANNOT BE ACCOMPLISHED
        THROUGH SEVERANCE ALONE ................................................................................ 8

        A.    Relief Under of Counts I through V Would Require a Specific Mandate to Comply
              with All Other Requirements of the Act. ..................................................................... 9

        B.    Plaintiff's challenge to the policy memorialized in the April 9 Email (Count VI)
              Remains...................................................................................................................... 10

III.    CONCLUSION................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adarand Constructors, Inc. v. Peña*,
515 U.S. 200 (1995)................................................................................................12

*Allegheny Def. Project v. FERC*,
964 F.3d 1 (D.C. Cir. 2020)...................................................................................12

*Azam v. D.C. Taxicab Comm'n*,
46 F. Supp. 3d 38 (D.D.C. 2014)...........................................................................12

*Caulfield v. Bd. of Ed. of New York*,
583 F.2d 605 (2d Cir. 1978)...................................................................................12

*Corley v. United States*,
556 U.S. 303 (2009)................................................................................................12

*Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*,
485 U.S. 568 (1988)................................................................................................12

*Edwards v. District of Columbia*,
755 F.3d 996 (D.C. Cir. 2014)...............................................................................2

*Fullilove v. Klutznick*
448 U.S. 448 (1980)................................................................................................12

*Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*,
219 F. Supp. 2d 20 (D.D.C. 2002).........................................................................12

*Lewis v. Ascension Par. Sch. Bd.*,
806 F.3d 344 (5th Cir. 2015) .................................................................................12

*Nat'l Institutes of Health v. Am. Pub. Health Ass'n*,
606 U.S. —, 145 S. Ct. 2658 (2025) (Barrett, J., concurring) ..............................12

*Nat'l Urb. League v. Trump*,
783 F. Supp. 3d 61 (D.D.C. 2025).........................................................................12

*Palantir USG, Inc. v. U.S.*,
129 Fed. Cl. 218 (2016), *aff'd*, 904 F.3d 980 (Fed. Cir. 2018)..............................12

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*,
551 U.S. 701 (2007)................................................................................................12

*Perkins Coie LLP v. U.S. Dep't of Justice*,
    770 F. Supp. 3d 190 (D.D.C. 2025)...................................................................................12

*Shaw v. Reno*,
    509 U. S. 630 (1993)..........................................................................................................1

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
    600 U.S. 181 (2023)..........................................................................................................12

*Susman Godfrey LLP v. Exec. Off. of the President*,
    789 F. Supp. 3d 15 (D.D.C. 2025)....................................................................................12

*United States v. Gray*,
    652 F. Supp. 3d 112 (D.D.C. 2023)..................................................................................12

*United States v. Powell*,
    6 F.3d 611 (9th Cir. 1993) ................................................................................................12

*United States v. Salerno*,
    481 U.S. 739 (1987)......................................................................................................2, 12

## Other Authorities

U.S. CONST. amend. I.............................................................................................................12

U.S. CONST. amend. XIV .....................................................................................................12

## Statutes

Administrative Procedure Act, 5 U.S.C. § 706.............................................................................12

Digital Equity Act, 47 U.S.C. § 1721 *et seq.* ..........................................................*Passim*

As requested by the Court during oral argument on June 11, 2026, Plaintiff submits this supplemental briefing explaining (1) why this case legally should not be decided on a motion to dismiss and requires discovery to develop a full factual record; and (2) why a decision on constitutionality and severance of a portion of the statute at the motion to dismiss phase would not resolve all of Plaintiff's claims.

**I.    Questions of Fact Remain Regarding Whether the Digital Equity Act's Competitive Grant Program Contains a Racial Classification or Discriminates Based on Race.**

This Court asked for this supplemental briefing to address Defendants' argument that the Digital Equity Act ("the Act") is unconstitutional on its face because it requires consideration of race "when picking winners and losers" under the Competitive Grant Program. Defendants' Motion to Dismiss ("Mot.") Dkt. 32-1 at 23. The Act is not facially unconstitutional, and whether or not the Department of Commerce ("DOC") considered race in the selection of grantees is a question of fact that cannot be determined at the pleading stage. Defendants are wrong in their conclusory claims to the contrary.

Discovery is required to determine how the grants were awarded. The administrative record of the grant award process will demonstrate this. As asserted in the Complaint, NDIA alleges that the DEA is race conscious without using racial classifications and no racial discrimination occurred. Again, the administrative record will provide the facts to answer such questions. "[R]ace consciousness does not lead inevitably to impermissible race discrimination." *Shaw v. Reno,* 509 U. S. 630, 646 (1993). This is a question that should be resolved based on the facts.

Within the Act, Congress provided a methodology to consider demographic data on race as a means of ensuring that members of racial and ethnic minorities were included—and not excluded—from the scope of the program, without discriminating against members of any race or ethnicity. Upon information and belief, 60 entities received Competitive Grant Program awards,

1

including NDIA, and five entities were obligated to an award. The facts found in the administrative record would demonstrate whether the Department of Commerce ("DOC") used race to determine who received a government benefit. Given the opportunity to review the administrative record, NDIA could prove that the Act is not unconstitutional because, as alleged in the Complaint, the facts regarding the grant selection process, *as applied*, demonstrate that there was no discrimination based on race in the grant selection process. The proof will be in the administrative record, and those facts should dictate the outcome.

Beyond Defendants' factually unsupported assertion as to how the Act *could* be applied, there is no evidence before the Court demonstrating how it *actually* was applied. Defendants present a facial challenge to the constitutionality of the Act. On a motion to dismiss, this means Defendants must show that there is no way the language they challenge can survive constitutional scrutiny. *United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."); *see also Edwards v. District of Columbia*, 755 F.3d 996, 1001 (D.C. Cir. 2014). This they cannot do.

First, the plain text of the statute does not require consideration of race. Nothing in the statute requires the DOC to provide any weight to whether an applicant to the Competitive Grant Program will benefit any specific covered population, let alone "racial and ethnic minorit[ies]" in particular. And Courts are clear that absent some congressional imperative, agencies have discretion as to how much weight, if any, to give to any one factor when making decisions. *See* Plaintiff's Opposition to Motion to Dismiss ("Pl. Opp.") Dkt. 38 at 35 (citing *Carlson v. Postal Regul. Comm'n*, 938 F.3d 337, 344 (D.C. Cir. 2019); *Cent. Vermont Ry., Inc. v. I.C.C.*, 711 F.2d 331, 336 (D.C. Cir. 1983); *Weyerhaeuser Co. v. Costle*, 590 F.2d 1011, 1045 (D.C. Cir. 1978)).

2

This means that the Act (on its face) does not require the consideration of race when selecting grant recipients and therefore does not contain a facial racial classification. *See* Pl. Opp. Section IV; *cf. Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720 (2007) ("[W]hen the government distributes burdens or benefits on the basis of individual racial classifications, that action is reviewed under strict scrutiny."); *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 296 (2023) ("UNC's admissions policies *mandate* that race is taken into consideration in this process as a 'plus' factor.") (citation omitted; emphasis added). Indeed, the Act directs the DOC "to the extent practicable, consider" whether a Competitive Grant Program applicant would increase internet access and use to any portion of a set of eight covered populations, only one of which is "racial and ethnic minorit[ies]." 47 U.S.C. § 1721(8)(G). This directive is distinct from a distribution of burdens or benefits on the basis of race and is instead a race conscious policy encouraging the DOC to consider whether funded programs will meaningfully be accessible to covered populations in addition to the public at large.

Second, were that not enough, this Court has Defendants' admission that consideration of racial demographics does not implicate strict scrutiny. Oral Arg. Tr. at 12:1-8 ("You know, an example of race-conscious policies might be some of the cases plaintiffs cite related to seeking government information related to race. There you're not allocating a benefit or burden based on race but you're simply seeking to collect information demographic data related to race. My understanding under current case law that's not a racial classification that triggers strict scrutiny."). This concession is supported by well-established law. *See Lewis v. Ascension Par. Sch. Bd.,* 806 F.3d 344, 355 n. 14 (5th Cir. 2015) (collecting cases noting that legislative bodies can consider racial demographics in drawing district boundaries); *Caulfield v. Bd. of Ed. of New York*, 583 F.2d 605, 611–12 (2d Cir. 1978) ("[T]he Constitution itself does not condemn the collection of [racial

3

and ethnic] data."). This concession means that Defendants' current facial challenge simply cannot stand. Mention of race in the Act cannot mean that the DOC is bound to apply it in an illegal manner as opposed to the legal manner Defendants concede is available. Defendants must do more than show that DOC considered demographic data in selecting grants to support the application of strict scrutiny.

Third, Defendants' reading of the statute runs contrary to the rules of statutory construction that require courts to not interpret statutes "in a way which is internally contradictory or that renders other provisions of the same statute inconsistent or meaningless." *United States v. Powell*, 6 F.3d 611, 614 (9th Cir. 1993) (quoting *Hughes Air Corp. v. Public Util. Comm'n*, 644 F.2d 1334, 1338 (9th Cir. 1981)); *see also Corley v. United States*, 556 U.S. 303, 314  (2009) ("[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.") (cleaned up). The phrase "to the extent practicable" operates to subordinate this piece of the Act to other mandatory legal obligations. *See Palantir USG, Inc. v. U.S.*, 129 Fed. Cl. 218, 273 (2016), *aff'd*, 904 F.3d 980 (Fed. Cir. 2018). That includes subordination to the Act's anti-discrimination provision. *See* 47 U.S.C. § 1726(a)(1) ("No individual in the United States may, on the basis of actual or perceived race, color, religion, national origin, sex, gender identity, sexual orientation, age, or disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity that is funded in whole or in part with funds made available to carry out this subchapter."). To read 47 U.S.C. § 1721(8)(G) as requiring a Competitive Grant Program award to be based on race would read out the Act's the anti-discrimination provision. *See* 47 U.S.C. § 1726(a)(1). "A 'general grant of authority cannot displace the clear, specific text of' a statute." *Allegheny Def. Project v. FERC*, 964 F.3d 1, 16 (D.C. Cir. 2020) (citation omitted). The anti-discrimination provision controls as a

4

matter of law. Thus, Defendants' interpretation of the challenged provision cannot stand—and certainly cannot justify a facial challenge on a motion to dismiss. *See Salerno*, 481 U.S. at 745. The Supreme Court has long held that "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988).[1]

If, indeed, there is discrimination—and NDIA submits there is not—the answer to this factual dispute would be determined by how the DOC applied the Act. A facial challenge succeeds only if a party is able to show that there is no viable way in which a statute may be applied constitutionally. *See Azam v. D.C. Taxicab Comm'n*, 46 F. Supp. 3d 38, 49 (D.D.C. 2014) ("[S]trict scrutiny will only be applied to a facially neutral law, if the law 'has been applied differently on the basis of race.'") (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886)). Thus, the crucial question is whether the DOC treated the "racial and ethnic minority" provision of the Act as a racial classification *in practice* when evaluating applications and awarding grants.

This question is a factual one, dependent on a full evidentiary record. *See Nat'l Urb. League v. Trump,* 783 F. Supp. 3d 61, 90 (D.D.C. 2025) ("[A]s-applied challenge[s] necessarily require[]

---

[1] During oral argument the Court inquired whether Congress was due any greater deference on matters of race consciousness than, say, a university. Oral Arg. Tr. at 47:12-14. The answer is yes, as a co-equal branch of government, courts must give deference to Congress. *Adarand Constructors, Inc. v. Peña*, 515 U.S. 200 (1995) (maintaining precedent of *Fullilove v. Klutznick,* 448 U.S. 448, 472 (1980) that, "[a] program that employs racial or ethnic criteria, even in a remedial context, calls for close examination; yet we are bound to approach our task with appropriate deference to the Congress, a co-equal branch charged by the Constitution with the power to 'provide for the . . . general Welfare of the United States' and 'to enforce, by appropriate legislation,' the equal protection guarantees of the Fourteenth Amendment."). Here, deference to Congress compels the denial of this facial constitutional challenge at the motion to dismiss stage to allow the development of a full factual record before determining that the statute is unconstitutional under any set of facts.

the development of a factual record for the court to consider.") (citation omitted); *United States v. Gray*, 652 F. Supp. 3d 112, 132 (D.D.C. 2023) (denying a motion to dismiss an indictment on the basis of an as-applied First Amendment constitutional violation because "any as-applied challenge is premature as the factual record has yet to be developed."). It is one that cannot be answered on a motion to dismiss. *See* Pl. Opp. at 32 (citing *Brokamp v. D.C.*, No. CV 20-3574, 2022 WL 681205, at *1 (D.D.C. Mar. 7, 2022)).

The inclusion of "racial and ethnic minorit[ies]" as one of eight "covered populations" for purposes of awarding grants under the Competitive Grant Program is not a racial classification requiring the application of strict scrutiny. Proceeding to discovery would provide NDIA with the opportunity to develop a factual record to further support this position. The administrative record will show how the DOC actually implemented the Competitive Grant Program and how the DOC evaluated and selected applications for award.[2] *See* Pl. Opp. at 32-33 (demonstrating the necessity of a factual record). There are multiple factual scenarios under which the DOC did not pick "winners and losers" based on race. Mot. at 23. For example, the administrative record may demonstrate that:

- Race was not the basis of any grant award;

- The DOC allocated awards based on the strength of the grantees' proposed programs with merely non-material consideration given to whether the programs benefited each covered population;

- The DOC's consideration of race was inclusive only, meaning that no awardee was denied a grant because it did not include racial and ethnic minorities among its covered populations;

- No grant applications were denied or rejected, and there were no "losers" at all;

---

[2] Discovery could also yield evidence from other agency defendants, including the Office of Management and Budget, which could shed light on the President's proposed budget.

- The DOC measured the benefits to covered populations only *after* making award determinations;

- The DOC's only consideration of race was a review of demographic data to ensure there was no discrimination against racial and ethnic minorities;

- The DOC assessed race based upon the "to the extent practicable" limitation consistent with the anti-discrimination clause;

- Third parties that were not members of racial or ethnic minorities were not excluded from grant awards or the benefits of those awards consistent with the non-discrimination provisions of the Act;

- No racial discrimination actually occurred during the grant award process.

- Defendants continue to implement part of the Competitive Grant Program despite the May 9, 2025 termination of the Program.[3]

Any one of these scenarios would demonstrate that, as applied, the Competitive Grant Program was neither racially discriminatory nor unconstitutional. The merits of NDIA's claims would be proven by the facts discovered in the administrative record. Indeed, Defendants unfairly and selectively quote facts not alleged in the Complaint, but from the administrative record regarding NDIA's grant application. *See* Mot. at 6 and Ex. C at 6-8. If the Court considers only the facts from the administrative record that Defendants have presented, it has only a small and one-sided portion, offered by the only party with access to the entirety of the record. Nor does the Court or NDIA have facts from the administrative record for any other applicant or grant awardee. As a matter of fundamental fairness, NDIA should have the opportunity to present facts regarding how the DOC considered other applications during the grant award process, which Defendants currently possess.

---

[3] Upon information and belief, defendants determined the tribal set-aside provisions under the Competitive Grant Program were severable and continued to implement them while terminating the rest of programs. *See* 47 U.S.C. § 1724 (j)(2); Nat'l Telecomms. Internet Admin., *NTIA Announces Two New Funding Opportunities to Expand Broadband Connectivity on Tribal Lands* (Jun. 17, 2026), https://www.ntia.gov/press-release/2026/ntia-announces-two-new-funding-opportunities-expand-broadband-connectivity-tribal-lands.

7

Further demonstrating the need for the administrative record, Defendants have offered no evidence that anyone in the DOC actually interpreted the provision of the Act at issue as "mandating" the consideration of race when selecting awardees. Only the administrative record will provide that information and without it the Court would be forging a new path and making a constitutionality ruling on an inadequate record. *See Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 219 F. Supp. 2d 20, 45 (D.D.C. 2002) ("The doctrine of constitutional avoidance counsels against answering such an important constitutional question at the motion to dismiss stage.").

A review of the administrative record would permit the Court to determine whether the consideration of "racial and ethnic minorit[ies]" as a single covered population under the Act really functioned as a "racial classification," such that the DOC allocated government benefits on the basis of race requiring strict scrutiny review, or merely as a consideration of demographic data, to which a lower standard of review applies (as conceded by Defendants, *see* Oral Arg. Tr. at 10:1-9). NDIA seeks to move to discovery so that it can prove the administrative record shows that the Act does not contain a racial classification and is instead a consideration of race by Congress for the purpose of inclusion that is not subject to strict scrutiny review.

## II.    Resolution at the Pleading Stage Cannot Be Accomplished Through Severance Alone

For the reasons stated above and in NDIA's Opposition, it would be improper to ignore the many open factual questions that must be addressed before the Court severs any aspect of the DEA. Reinstatement of the Competitive Grant Program, which was one form of relief sought by NDIA, on the basis of severability, would require a ruling in NDIA's favor as to Counts I through V. NDIA's claim under Count VI could not be addressed in a severance-only disposition, and would

require factual determinations as to whether the Executive Branch actions were arbitrary and capricious.

### A. Relief Under of Counts I through V Would Require a Specific Mandate to Comply with All Other Requirements of the Act.

To redress NDIA's injuries alleged in Counts I through V, any order reinstating the Competitive Grant Program must require that Defendants adhere to all of the other statutory provisions in carrying out the reimplemented Program. Such an Order would need to include a mandate addressing the concerns that would otherwise go unresolved:

First, any Order should require Defendants to administer the reinstated Competitive Grant Program in a manner consistent with the Digital Equity Act and all applicable law, for all eligible covered populations, subject only to severance of 47 U.S.C. § 1721(8)(G).

Second, any Order should expressly prohibit the DOC from retaliating or discriminating against NDIA in any future competitive grant process based on NDIA's filing or prosecution of this litigation.

Third, to ensure that any mandate is given meaningful effect, given that Defendants appear to recognize savings from the Program's cancellation,[4] NDIA respectfully requests that this Court require the Government to demonstrate its compliance by directing Defendants to file periodic status reports, or alternatively, convene status conferences at which Defendants must explain the concrete steps taken to reinstate and administer the Program consistent with the Court's order. *See, e.g.*, *Perkins Coie LLP v. U.S. Dep't of Justice,* 770 F. Supp. 3d 190 (D.D.C. 2025) (ordering defendants to submit a status report detailing what actions they had taken to comply with the

---

[4] Off. of Mgmt. and Budget, *Budget of the U.S. Government* (Apr. 3, 2026), https://www.whitehouse.gov/wp-content/uploads/2026/04/budget_fy2027.pdf at 15 (proposing to cancel funding for NTIA's Digital Equity Competitive Grant Program based on the assertion that "the Biden Administration planned to unconstitutionally award based on race.").

court's order and confirming that compliance had been achieved); *see also Susman Godfrey LLP v. Exec. Off. of the President*, 789 F. Supp. 3d 15 (D.D.C. 2025) (ordering similar compliance measures).

**B.      Plaintiff's challenge to the policy memorialized in the April 9 Email (Count VI) Remains.**

If the Court addresses the constitutionality of 47 U.S.C. § 1721(8)(G) at the motion to dismiss phase and reinstates the Competitive Grant Program, Count VI of NDIA's complaint—a challenge under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) to the April 9, 2025 email regarding allowable costs under the Competitive Grant Program ("the April 9 Email")—will remain. Defendants no longer contest the Court's jurisdiction to hear that challenge, nor that NDIA has standing to raise it. NDIA's challenge to the April 9 Email is precisely the type of claim the Supreme Court has indicated belongs in district court. *See Nat'l Institutes of Health v. Am. Pub. Health Ass'n* ("*NIH*"), 606 U.S. —, 145 S. Ct. 2658, 2661 (2025) (Barrett, J., concurring). The administrative record will support that this policy was arbitrary and capricious, by across-the-board denying, without reasoned explanation, recovery of costs related to "digital inclusion activities" and "digital literacy training" that are expressly mandated under the Competitive Grant Program. 47 U.S.C. § 1721(11). Further, the April 9 Email announces a policy that would continue to apply to any Competitive Grant Program recipient. To dismiss Count VI now would leave prospective Competitive Grant Program recipients, including NDIA, in limbo as to their proposals and awards under the reinstated Program. NDIA's well-plead challenge to the April 9 Email cannot be dismissed now.

**III.      Conclusion**

NDIA respectfully requests that this Court deny Defendants' Motion to Dismiss.

Dated: June 22, 2026                                    Respectfully submitted,

By: */s/ Edward G. Caspar*                              By: */s/ Keith J. Harrison*
Edward G. Caspar, D.C. Bar No. 1644168                 Keith J. Harrison, D.C. Bar No. 416755
Leah Frazier, D.C. Bar No. 492540*                     Christian N. Curran, D.C. Bar No. 1004269
Gillian Cassell-Stiga, D.C. Bar No. 90032319*          Alexandra Barbee-Garrett,* D.C. Bar No. 187886
Marc P. Epstein, D.C. Bar No. 90003967
                                                       CROWELL & MORING LLP
LAWYERS' COMMITTEE FOR                                 600 Fifth St. N.W.
CIVIL RIGHTS UNDER LAW                                 Washington, DC 20001
1500 K Street N.W. Suite 900                           Tel: (202) 624-2500
Washington, D.C. 20005                                 KHarrison@crowell.com
Tel: 202-662-8300                                      CCurran@crowell.com
ECaspar@lawyerscommittee.org                           ABarbee-Garrett@crowell.com
LFrazier@lawyerscommittee.org
GCassell-Stiga@lawyerscommittee.org
MEpstein@lawyerscommittee.org                          */s/ Warrington Parker*
                                                       Warrington Parker, CA Bar No. 14803

                                                       CROWELL & MORING LLP
                                                       3 Embarcadero Center, 26th Floor
                                                       San Francisco, CA 94111
                                                       Tel: (415) 986-2800
                                                       WParker@crowell.com

                                                       Attorneys for National Digital Inclusion Alliance

                                                       *Pro Hac Vice

11

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Federal Rule of Civil Procedure 5 and LCvR 5.4, I hereby certify the foregoing

document was filed using the Court's ECF system:


Dated: June 22, 2026                          */s/ Keith J. Harrison*
                                              Keith J. Harrison